UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS JAMES CORRIGAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF CALAVERAS, et al.,<br><br>Defendants. | No. 1:20-cv-00931-DAD-SKO<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS<br><br>(Doc. Nos. 17, 24) |

This matter is before the court on two separate motions to dismiss. First, defendant Joseph Boberg has moved to dismiss plaintiffs' original complaint pursuant to Rule 4(m) and Rule 12(b)(5) of the Federal Rules of Civil Procedure due to insufficient service of process. (Doc. No. 17.) Second, defendants County of Calaveras, Sheriff DiBasilio, Kevin Stevens, Jim Moser, and Brian Terry have moved to dismiss the first and third causes of action of plaintiffs' first amended complaint pursuant to Rule 12(b)(6) due to plaintiffs' failure to state a claim upon which relief can be granted. (Doc. No. 24.) Pursuant to General Order No. 617 addressing the public health emergency posed by the COVID-19 pandemic, both motions were taken under submission on the papers. (Doc. Nos. 19, 25.) For the reasons explained below, the court will deny defendant Boberg's motion and grant in part and deny in part defendants County of Calaveras, Sheriff DiBasilio, Kevin Stevens, Jim Moser, and Brian Terry's motion.

1

**FACTUAL BACKGROUND**

This case arises from a lethal shooting by law enforcement officers of John James Corrigan ("Corrigan" or "decedent"). Plaintiffs Thomas James Corrigan, Kathleen Ann Waite, Kirstin Lynn Corrigan, and Devin James Corrigan (all family members of decedent Corrigan) filed this lawsuit against defendants and allege as follows in their operative first amended complaint ("FAC"). (Doc. No. 23.)

Between 9:46 p.m. and 9:52 p.m. on July 5, 2018, the Calaveras County Sherriff's Department received calls from witnesses reporting that a man (later determined to be Corrigan) was in the middle of Mountain Ranch Road in San Andreas, California with an "unknown" rifle. (*Id.* at ¶¶ 5, 29.) None of the witnesses reported that the man was threatening them, but they did report that he was acting strangely, waiving his hands and the weapon above his head. (*Id.* at 29.) At 9:55 p.m., defendants Stevens, Moser, and Terry, all members of the Calaveras County Sherriff's Department, and defendant Boberg, an officer for the California Highway Patrol, arrived at the reported location and confronted Corrigan. (*Id.* at ¶¶ 5, 30.) Witnesses reported that Corrigan was acting incoherent, growling, and staring into space. (*Id.* at ¶ 32.) Moreover, he was not responding to law enforcement commands, although he made no threatening moves to shoot at law enforcement nor point his rifle at them during this incident. (*Id.*) Corrigan then turned around from law enforcement and began walking toward his father's residence, located approximately 116 yards away. (*Id.* at ¶ 33.)

Mountain Ranch Road is in a rural area, and properties and residences are spaced far apart there. (*Id.*) At approximately 9:58 p.m., defendant Stevens yelled "I am going to drop him" and began firing at Corrigan, even though Corrigan had his back toward the deputies. (*Id.* at ¶ 34.) Defendants Terry, Moser, and Boberg also fired their weapons at Corrigan. (*Id.*) Corrigan was shot three times and died at the scene. (*Id.* at ¶¶ 34–37.) Later, it was determined that Corrigan was carrying an air-soft bb gun with no $CO_2$ air tank. (*Id.* at ¶ 38.) No attempt was made by law enforcement to deploy the K-9 dog that was on the scene nor to use any form of non-lethal force. (*Id.*)

/////

Plaintiff Thomas James Corrigan is the father of the decedent, plaintiff Kathleen Ann Waite is the mother of the decedent, and plaintiffs Devin James Corrigan and Kirstin Lynn Corrigan are the decedent's two adult children. (*Id*. at ¶¶ 5–9.) Based on the alleged facts, plaintiffs filed this civil rights action pursuant to 42 U.S.C. § 1983, asserting the following three causes of action: (1) a claim against defendants Stevens, Moser, Terry, and Boberg for use of excessive force in violation of the Fourth Amendment to the U.S. Constitution; (2) a claim against defendants Stevens, Moser, Terry, and Boberg for deprivation of their constitutional right to a familial relationship with the decedent in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution; and (3) a *Monell* claim against defendants County of Calaveras and Sheriff DiBasilio. (*Id.* at 11, 12, 14.)

## PROCEDURAL BACKGROUND

Plaintiffs filed their original complaint on July 4, 2020. (Doc. No. 1.) On October 26, 2020, plaintiffs and all defendants except defendant Boberg filed a stipulation to allow plaintiffs to file a first amended complaint, and the court thereafter adopted that stipulation. (Doc. Nos. 15, 16.) On November 9, 2020—before plaintiffs filed their FAC—defendant Boberg filed the pending motion to dismiss plaintiffs' complaint pursuant to Rule 4(m) and Rule 12(b)(5) due to insufficient service of process, or in the alternative, to quash service of the complaint as to him. (Doc. No. 17.)

Plaintiffs then filed their FAC on November 25, 2020. (Doc. No. 23.) On December 22, 2020, plaintiffs filed a returned executed summons reflecting that defendant Boberg was personally served with a copy of the FAC and the amended summons on that day. (Doc. No. 26.) Also on December 22, 2020, plaintiffs filed their opposition to defendant Boberg's motion to dismiss, and on December 29, 2020, defendant Boberg filed his reply thereto. (Doc. Nos. 27, 28.)

On December 16, 2020, defendants Calaveras County, Sheriff Rick DiBasilio, Jim Moser, Kevin Stevens, and Brian Terry filed their motion to dismiss the first and third causes of action of plaintiffs' FAC pursuant to Rule 12(b)(6) due to plaintiffs' failure to state a claim upon which relief can be granted. (Doc. No. 24.) On January 18, 2021, plaintiffs filed their opposition to defendants' motion, and on January 25, 2021, defendants filed their reply. (Doc. Nos. 31, 32.)

# LEGAL STANDARD

**A.     Rule 12(b)(5) Motion to Dismiss Due to Insufficient Service of Process**

A federal court has jurisdiction over a defendant only if the defendant has been properly served under Rule 4. *Direct Mail Specialists, Inc v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988); *see also Long v. McAfee*, No. 19-cv-00898, 2019 WL 5536228, at *4 (E.D. Cal. Oct. 25, 2019). "Mere notice that a lawsuit is pending is not sufficient." *Razavi v. Regis Corp.*, No. 5:15-cv-02574-EJD, 2016 WL 97438, at *4 (N.D. Cal. Jan. 8, 2016). However, "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Direct Mail Specialists*, 840 F.2d at 688 (quoting *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984)); *see also Long*, 2019 WL 5536228, at *5.

Pursuant to Rule 4(c), a defendant must be served with a copy of the summons and complaint. Fed. R. Civ. P. 4(c). Rule 4(e) identifies four permissible methods of service. Namely, (i) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; (ii) delivering a copy of the summons and of the complaint to the individual personally; (iii) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (iv) delivering a copy of each to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. (4)(e). Rule 4(m) states that if a defendant "is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).

Under Rule 12(b)(5), a defendant may challenge the method of service attempted by a plaintiff. Fed. R. Civ. P. 12(b)(5); *U.S.A. Nutrasource, Inc. v. CNA Ins. Co.*, 140 F. Supp. 2d 1049, 1052 (N.D. Cal. 2001). The district court has discretion to either dismiss the action against the improperly served defendant or quash service of the complaint on that defendant. *S.J. v. Issaquah Sch. Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006). "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." *Almont*

*Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1227 (C.D. Cal. 2015) (quoting *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004)).

B.     **Rule 12(b)(6) Motion to Dismiss Due to Failure to State a Claim**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though Rule 8(a) does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). It is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**ANALYSIS**

A.     **Defendant Boberg's Motion to Dismiss Pursuant to Rule 12(b)(5)**

Defendant Boberg advances two primary arguments in support of his motion to dismiss. First, he argues that he has not been personally served a copy of the plaintiffs' original summons and complaint. (Doc. No. 17 at 5.) Defendant Boberg concedes that plaintiffs served Lieutenant Commander John Warren of the San Andreas substation of the California Highway Patrol on defendant's behalf on September 21, 2020, but he contends that substituted service on an

employer is not authorized under Rule 4(e). (*Id.* at 5.) Second, defendant Boberg argues that plaintiffs' complaint should be dismissed because plaintiffs failed to serve the State of California.[1] (*Id.* at 6.) Defendant Boberg asserts that, at the time he filed the pending motion to dismiss, more than 90 days had elapsed since the case was filed, and plaintiffs had not yet served him with the summons and complaint, as required by Rule 4. (*Id.* at 7.) Moreover, he contends that plaintiffs "cannot provide any reasonable explanation for their failure to comply with their obligations" under Rule 4. (*Id.* at 8.)

In their opposition to defendant Boberg's motion, plaintiffs concede that the Deputy Attorney General was not initially served on behalf of the State of California and that defendant Boberg was not initially served with a copy of the original summons and complaint. (Doc. No. 27 at 2.) Plaintiffs contend, however, that defendant Boberg was served by mail with the original complaint and summons on November 20, 2020, which they admit was after the initial deadline for service pursuant to Rule 4. (*Id.* at 3.) Plaintiffs further contend that Deputy Attorney General Norman Morrison was also served by mail on that same date, again admittedly after the service deadline. (*Id.*) In addition, plaintiffs point out that they filed their FAC on November 25, 2020, and the FAC was personally served on defendant Boberg on December 22, 2020 and served by email on the Deputy Attorney General on November 25, 2020. (*Id.*; *see also* Doc. No. 23-1.) Plaintiffs appear to contend that personal service of the FAC established personal jurisdiction over defendant Boberg and that this court should therefore deny defendant's motion to dismiss. (Doc. No. 27 at 4.)

In his reply, counsel on behalf of defendant Boberg argues that plaintiffs have still failed to validly serve either Boberg or the State of California with the original summons and complaint, and that service of the FAC has not cured plaintiffs' insufficient service of process. (Doc. No. 28 at 4.) Specifically, defendant Boberg contends that "[p]laintiffs' recent service of the [FAC] is also improper and legally void" because that service "attempt took place nearly two-and-a-half

---

[1] California law requires that a plaintiff who brings a case against state officials in their official capacity must serve the summons and complaint on the California Attorney General on behalf of the State of California. *See* Cal. Gov't Code § 955.4(a). Here, plaintiffs have brought this lawsuit against defendant Boberg in his official and individual capacities. (Doc. No. 23 at 1.)

6

months after the statutory deadline for service, with no order or leave for an extension of time either requested or granted." (*Id.*) According to defendant, plaintiffs "appear to erroneously believe the filing of an amended complaint 'restarts the clock' for service on already named parties, and that the amended complaint 'related back' to the filing of the original complaint." (*Id.* at 8.)

Plaintiffs' complaint was apparently served on John Warren, the Lieutenant Commander of the California Highway Patrol's San Andreas office, on behalf of defendant Boberg. (Doc. No. 10.) This is perfectly appropriate given defendant Boberg's employment as a law enforcement officer with the California Highway Patrol. Nonetheless, defendant Boberg's counsel argues that Rule 4(e) of the Federal Rules of Civil Procedure does not authorize service at a defendant's place of employment. (Doc. No. 17 at 5.) Defendant cites the decision in *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987) for the proposition that "Rule 4 has been generally construed to mean that service at a defendant's place of employment is insufficient." *Id.* However, in the next sentence of the opinion, omitted by defendant's counsel, the Ninth Circuit clarified that "[m]ore specifically, where money damages are sought through a *Bivens* claim, personal service and not service at the place of employment, is necessary to obtain jurisdiction over a defendant in his capacity as an individual." *Id.* (citations omitted). The decision in *Daly-Murphy* has been cited for the rule that "[s]ervice at a person's place of employment is generally insufficient *if the claim is against a defendant in his individual capacity alone*." *Jercich v. Cnty. of Merced*, No. 1:06-cv-00232-OWW-DLB, 2006 WL 3747184, at *5 (E.D. Cal. Dec. 19, 2006) (emphasis added) (citing *Daly-Murphy*, 837 F.2d at 355)). Here, the claims against defendant Boberg are not claims against defendant in his individual capacity alone.

Moreover, Rule 4(e)(1) authorizes service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Under California law, service at a party's usual place of business is authorized under certain circumstances, e.g., where the party to be served is a business entity, a public entity, a minor, or a political candidate, or where "a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served." Cal. Civ.

Proc. Code § 415.20; *see also* Cal. Civ. Proc. Code § 415.30 (mail with acknowledgment of receipt). Here, because defendant Boberg is being sued in his official capacity, the court concludes that service could fall under the exception for a public entity.[2]

However, plaintiffs in this case must also serve the California Attorney General because plaintiffs have sued a California state official in his official capacity, "which is tantamount to suing the state itself." *Kishore v. Newsom*, No. 20-cv-5859-DMG (EX), 2020 WL 6559157, at *1 (C.D. Cal. June 30, 2020) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). "California requires that, in such cases, '[s]ervice of summons . . . shall be made on the Attorney General." *Id.* (citing Cal. Gov't Code § 955.4(a)). As defendant points out, plaintiffs' only attempt to serve the California Attorney General in this case consisted of "an attempt at substituted service using an altered version of the Complaint . . . well after the deadline for service had already expired." (Doc. No. 28 at 10.) Indeed, plaintiffs were required to serve defendant Boberg and the California Attorney General within 90 days of July 4, 2020 (when they filed the original complaint), i.e., by October 2, 2020. Instead, plaintiffs served Deputy Attorney General Norman Morrison by mail with the original complaint on November 19, 2020—missing the service deadline by 48 days.[3] (*See* Doc. No. 21.)

---

[2] It appears that plaintiffs could not have served defendant Boberg personally, even with the exercise of reasonable diligence. It is alleged that plaintiffs' process server was threatened with arrest the first time she tried to serve defendant Boberg at his home. (Doc. No. 27 at 3.) Thus, plaintiffs' decision to serve defendant at his place of employment appears perfectly reasonable, unless defendant suggests plaintiffs' process server risk arrest to effectuate service.

[3] Plaintiffs' other two arguments as to why service was timely are both unpersuasive. First plaintiffs suggest that their filing and serving of the FAC resolved all issues with regard to service. (Doc. No. 27 at 4.) Second, plaintiffs argue that defendant Boberg's motion to dismiss was a "special appearance" not a "general appearance," which plaintiffs suggest extended their time to serve defendant. (*Id.*) With regard to the first argument, the 90-day service period would not restart as to defendant Boberg with the filing of the amended complaint. *See Tamanaha v. Wells Fargo Bank, NA*, No. 10-cv-00273 DAE-KSC, 2011 WL 3861392, at *2 (D. Haw. Aug. 12, 2011) (citing *Bolden v. City of Topeka*, 441 F.3d 1129, 1148 (10th Cir. 2006) ("[T]he 120-day period provided by [FRCP] 4(m) is not restarted by the filing of an amended complaint except as to those defendants newly added in the amended complaint.")); *see also City of Merced v. Fields*, 997 F.Supp. 1326, 1337–39 (E.D. Cal. 1998). Because defendant Boberg is not a newly added defendant, the FAC provided plaintiffs with no additional time to serve him. With respect to plaintiffs' second argument, "[t]he Federal Rules do not distinguish between 'special' and 'general' appearance," and therefore plaintiffs' argument lacks merit. *Almont Ambulatory*

8

Despite the circumstances described above, it is also the case that Rule 4(m) provides that where a defendant is not served within 90 days of the complaint being filed, the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time" unless the plaintiff shows good cause for the failure. Fed. R. Civ. P. 4(m). If a plaintiff shows good cause, "the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m); *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001). When determining whether the good cause requirement has been satisfied, the court must consider whether: (1) the party to be served personally received actual notice of the lawsuit; (2) the defendant would suffer no prejudice; and (3) plaintiff would be severely prejudiced if his or her complaint were dismissed. *See Rodriguez v. Cnty. of San Joaquin*, No. 2:16-cv-00770-TLN-JDP, 2021 WL 1214569, at *3 (E.D. Cal. Mar. 31, 2021). Additionally, the Ninth Circuit has concluded that even where good cause is not established, district courts still have the discretion to dismiss without prejudice or to extend the time period for service. *Id.* "In making this decision, courts may consider factors such as 'a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service.'" *Id.* (citing *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007)).

Here, the court concludes that there is good cause to extend the time for service. Defendant Boberg does not dispute that he had actual notice of this action. The court notes the service at defendant Boberg's place of employment and the proper service on all of the other defendants. Moreover, defendant Boberg makes no argument as to how the granting of an extension of time to effectuate service would prejudice him, nor does the court perceive any such prejudice. Finally, plaintiffs would obviously be severely prejudiced if the court were to dismiss

---

*Surgery Center, LLC v. UnitedHealth Grp., Inc.*, No. 14-cv-3053-MWF (AFMx), 2018 WL 10878531, at *3 (C.D. Cal. July 18, 2018). Plaintiffs rely only on California law in advancing this argument, but state law is not controlling in the federal courts "in the determination of the question as to whether an appearance is general or special." *United States v. Tacoma Oriental S.S. Co.*, 86 F.2d 363, 366 (9th Cir. 1936); *see also Hamilton v. Willms*, No. 1:02-cv-6583-AWI-SMS, 2007 WL 2904286, at *3 (E.D. Cal. Oct. 4, 2007) ("[T]echnical distinctions between general and special appearances have been abolished and the rulemakers wisely concluded that no end is accomplished by retaining those terms in federal practice.").

their complaint as to defendant Boberg.  The statute of limitations for a § 1983 claim such as that presented here in California is two years.  *See Williams v. Fresno Cnty. Dep't. of Social Services*, No. 1:21-cv-00596-DAD-SAB, 2021 WL 2188137, at *9 (E.D. Cal. May 28, 2021).  The events underlying this action took place on July 5, 2018 and plaintiffs filed their complaint on July 4, 2020, almost exactly two years later.  Plaintiffs would therefore be unable to bring a new action against defendant Boberg if the court were to grant his motion to dismiss on ineffective service grounds.  Accordingly, defendant Boberg's motion to dismiss plaintiffs' complaint against him due to plaintiffs' ineffective service of process will be denied.  In the interest of resolving the dispute over service beyond question, plaintiffs are directed to serve the current operative FAC or any future second amended complaint on defendant Boberg and the Deputy California Attorney General at their place of employment or by mail within thirty (30) days of this order or the filing of a second amended complaint, whichever comes later.

**B. Defendants Calaveras County, DiBasilio, Moser, Stevens, and Terry's Rule 12(b)(6) Motion to Dismiss Plaintiff's First and Third Causes of Action**

1. <u>Plaintiffs' First Cause of Action</u>

Plaintiffs' first cause of action is a § 1983 claim against defendants Moser, Stevens, Terry, and Boberg for use of excessive force in violation of the Fourth Amendment.  (FAC at 11.)  As noted, plaintiffs bring this claim as decedent's successors in interest.

Successors in interest asserting a § 1983 claim for use of excessive force must demonstrate that the relevant state's law authorizes a survival action and that they meet that state's requirements.  *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). Here, defendants argue that the California Tort Claims Act requires a plaintiff seeking to pursue a wrongful death claim as a successor in interest against a public employee to present a written claim to the state's Victim Compensation and Government Claims Board within six months of accrual of the action.  (Doc. No. 24-1 at 6) (citing *Salmon v. Kern Cnty. Sheriff's Dep't.*, No. 1:13-cv-00725-AWI-JLT, 2013 WL 2318906, at *3 n.2 (E.D. Cal. May 28, 2013) (citing Cal. Gov't. Code §§ 905, 911.2(a), 945.4, 950.2)).  Defendants conclude that because

/////

plaintiffs never presented such a written claim, their first cause of action should be dismissed. (Doc. No. 24-1 at 6.)

Although it is true that plaintiffs must present a written claim to the Government Claims Board with respect to state tort survival claims, California Government Code §§ 911.2, 945.4 do not apply to § 1983 claims. *See Garcia v. Adams*, No. 04-cv-5999-AWI-SMS, 2006 WL 403838, at *10 (E.D. Cal. Feb. 17, 2006) (finding dismissal of state law claims to be appropriate where the plaintiff did not comply with the Tort Claims Act, but § 1983 survival claims could proceed if the plaintiff established she had standing under the California Code of Civil Procedure); *Isayeva v. Cnty. of Sacramento*, No. 2:13-cv-02015-KJM, 2015 WL 5544505, at *5–6 (E.D. Cal. Sept. 18, 2015) (finding the California Tort Claims Act inapplicable to Fourth Amendment claims brought pursuant to § 1983); *State of California v. Superior Court* ("*Bodde*"), 32 Cal. 4th 1234, 1040 (2004) (concluding that the Government Claims Code does not apply to § 1983 claims). Rather, California expressly authorizes survival actions by successors in interest as to constitutional claims brought pursuant to § 1983 so long as the plaintiffs comply with California Civil Procedure Code §§ 377.30, 377.32. *See Tatum v. City and Cnty. of San Francisco*, 441 F.3d 1090, 1094 n.2 (9th Cir. 2006) ("Under California law, if an injury giving rise to liability occurs before a decedent's death, then the claim survives to the decedent's estate."); *see also* Cal. Civ. Proc. Code § 377.30. However, to proceed with such a claim as a successor in interest, a plaintiff must still file a declaration establishing their compliance with California Civil Procedure Code § 377.32. *Id.* In this regard, under § 377.32 a person who seeks to commence an action as the decedent's successor in interest shall execute and file an affidavit or a declaration under penalty of perjury stating:

    (1) The decedent's name.

    (2) The date and place of the decedent's death.

    (3) "No proceeding is now pending in California for administration of the decedent's estate."

    (4) If the decedent's estate was administered, a copy of the final order showing the distribution of the decedent's cause of action to the successor in interest.

> (5) Either of the following, as appropriate, with facts in support thereof:
>
>> (A) "The affiant or declarant is the decedent's successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) and succeeds to the decedent's interest in the action or proceeding."
>>
>> (B) "The affiant or declarant is authorized to act on behalf of the decedent's successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) with respect to the decedent's interest in the action or proceeding."
>
> (6) "No other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or proceeding."
>
> (7) "The affiant or declarant affirms or declares under penalty of perjury under the laws of the State of California that the foregoing is true and correct."

Cal. Civ. Proc. Code § 377.32. The successor in interest must also file a certified copy of the decedent's death certificate. *See Ollison v. Alameda Health Sys.*, No. 20-cv-04944-LB, 2020 WL 7227201, at *5 (N.D. Cal. Dec. 8, 2020).

Under California Probate Code § 6402(a), if a decedent has surviving children, the estate goes to those children, not to the parents. Plaintiffs concede this and therefore agree that only plaintiffs Devin James Corrigan and Kirstin Lynn Corrigan, the decedent's children, would have standing to proceed on the first cause of action if properly alleged. With that resolved, the court concludes that with respect to the children of the decedent, the FAC otherwise sufficiently complies with the requirements of § 377.32.[4] The court therefore concludes that plaintiffs Devin James Corrigan and Kirstin Lynn Corrigan have adequately alleged their standing to bring the first cause of action on behalf of the decedent's estate as successors in interest.

Accordingly, defendants' motion to dismiss plaintiffs' first cause of action for violation of the decedent's Fourth Amendment right to be free from the use of excessive force will be denied

---

[4] Although plaintiffs did not file a death certificate for the decedent, Mr. Corrigan's death is uncontested by the parties, and courts in this district have previously found that the failure to file a death certificate does not prove fatal to a survival action. *See Cotta v. Cty. of Kings*, 79 F. Supp. 3d 1148, 1159 (E.D. Cal. 2015) (excusing plaintiff from filing a certified copy of decedent's death certificate).

12

as to plaintiffs Devin James Corrigan and Kirstin Lynn Corrigan but granted with respect to Thomas Corrigan and Kathleen Waite, who lack standing to assert that claim as the decedent's parents.

### 2. Plaintiffs' Third Cause of Action

Defendants also move to dismiss plaintiffs' third cause of action brought pursuant to 42 U.S.C. § 1983 for "Municipal Liability for Unconstitutional Custom or Policy" against defendants County of Calaveras and DiBasilio. (Doc. No. 23 at 14.) Municipalities "may not be held vicariously liable for the unconstitutional acts of its employees under the theory of *respondeat superior*." *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992). Rather, for a municipality to be liable under § 1983, a plaintiff must allege and ultimately prove that an official municipal policy caused his or her constitutional deprivation. *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691 (1978). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). As the Ninth Circuit has stated:

> To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a [§] 1983 plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'

*Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389–91 (1989)). Similarly, to hold a local government liable for an official's conduct, a plaintiff must first allege and establish that the official "(1) had final policymaking authority 'concerning the action alleged to have caused the particular constitutional or statutory violation at issue' and (2) was the policymaker for the local governing body for the purposes of the particular act." *Cortez v. Cnty. of Los Angeles*, 294 F.3d 1186, 1189 (quoting *Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1028 (9th Cir. 2000) (citations omitted)).

Here, defendants argue that plaintiffs have failed to state a cognizable *Monell* claim because "they allege a single incident, the shooting of Decedent John James Corrigan, without

13

sufficient factual allegations to support a *Monell* claim against the County or Sheriff DiBasilio." (Doc. No. 24-1 at 7.) According to defendants, plaintiffs present nothing more than conclusory allegations of unconstitutional practices and defendants' notice of these practices. (*Id.* at 7–8.) Defendants further contend that although plaintiffs' FAC references a separate fatal shooting in 2012, as well as an allegation that defendant Stevens was involved in another matter involving the excessive use of force in 2017, they fail to "sufficiently analogize or connect those alleged incidents to the alleged facts in this case to support a *Monell* claim." (*Id.* at 8.)

In their opposition, plaintiffs first point out that in their FAC they allege that on March 15, 2012, a man named Kevin Duey was shot in the back and killed by a Calaveras County Sheriff Deputy. (Doc. No. 31 at 5.) According to plaintiffs, "[t]his shooting incident is similar to the allegations here where the Decedent did not point or fire his weapon at deputies" but instead was shot in the back as he turned to walk back to his residence. (*Id.*) Second, plaintiffs note that they have alleged in their FAC that defendant Stevens was involved in another excessive use of force case on June 24, 2017. (*Id.*) Third, plaintiffs allege that defendant DiBasilo formed a "Behavioral Health Triage Program" with Calaveras County Mental Health and Human Services and "failed to provide guidance, procedures, [and] training to deputies on the use of the Behavioral Health Triage Program." (*Id.* at 5.) Plaintiffs argue that the alleged failure to abide by this program, when considered with the two referenced past events, represents a recognized custom of failing to properly deal with mentally ill and/or suicidal individuals, leading to the use of excessive force by Calaveras County Sheriff Deputies and inadequate supervision of those deputies. (*Id.*)

In their reply, defendants argue that "[r]andom acts or isolated events are insufficient to establish custom." (Doc. No. 32 at 4) (citing *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989)). Moreover, defendants assert that plaintiffs' attempts to clarify that their claim is based on inadequate training regarding encounters with the mentally ill rather than a custom or policy fails because "they offer nothing more than threadbare, conclusory allegations." (Doc. No. 32 at 5.) With regard to the Behavioral Health Trial Program, defendants argue that plaintiffs do not allege that the 2012 shooting incident involved a mentally impaired suspect, nor

do they allege that the program even existed in 2012. (*Id.*) With respect to the alleged 2017 incident involving defendant Stevens, defendants contend that plaintiffs "fail to provide facts regarding Defendant Sgt. Stevens's alleged use of force." (*Id.*) Finally, defendants conclude that even viewing these two alleged incidents in the light most favorable to plaintiffs, "they do not relate to mental illness, incoherence, or suicidal behavior in the least or indicate any nexus to the incident at issue in this case." (*Id.* at 6.)

The court initially notes that it is unclear on what theories plaintiffs are attempting to base their municipal liability claim. As alleged in their complaint, plaintiffs' *Monell* claim is based on an unconstitutional custom or policy. However, in their opposition to defendants' pending motion to dismiss they now appear to argue that their claim is actually based on an alleged failure to train. (*See* Doc. No. 31 at 4) ("Plaintiff[s] advance[] their *Monell* claims on inadequate training and inadequate supervision in regards to the mental ill, and ratification of the killing of Decedent.") In any event, the court finds that plaintiffs have failed to adequately plead a *Monell* claim based on either an alleged failure to train or an unconstitutional custom or practice.

"[T]he Ninth Circuit has 'long recognized that a custom or practice can be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" *Gonzalez v. Cnty. of Merced*, 289 F. Supp. 3d 1094, 1117 (E.D. Cal. 2017) (quoting *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233–34 (9th Cir. 2011) (citation and internal quotations omitted)). Of course, a complaint "'must contain sufficient allegations of *underlying facts* to give fair notice and to enable the opposing party to defend itself effectively' and must plausibly suggest an entitlement to relief." (*Id.*) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). Here, plaintiffs have alleged no facts in their complaint regarding an unconstitutional policy, custom or practice; nor have they alleged facts which, if proven, would demonstrate that any custom or practice was of "sufficient duration, frequency, and consistency such that [it] has become a traditional method of carrying out a policy." *Harper v. Cnty of Merced*, No. 1:18-cv-00562-LJO-SKO, 2018 WL 5880786, at *6 (E.D. Cal. Nov. 8, 2018). Rather, plaintiffs merely recite the essential elements of a *Monell* claim and accuse defendants of violating those elements (Doc. No. 23 at 6–8). *See Dougherty v. City of*

*Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (affirming the district court's dismissal of a *Monell* claim where the pleading "lack[ed] any factual allegations that would separate them from the formulaic recitation of a cause of action's elements deemed insufficient by Twombly.") Plaintiffs' references to a 2012 shooting and a 2017 excessive use of force incident fail to mention any connection between those events and the treatment of suspects who appear to be mentally ill. Indeed, plaintiffs do not connect the two alleged prior events to any sort of described policy or custom implemented by defendants, either explicitly or implicitly. Further, other than vague references to those two incidents, plaintiffs point to no other underlying facts supporting a *Monell* claim.

Instructive in this regard is the case of *Duenez v. City of Manteca*, No. 2:11-cv-1820-LKK-AC, 2012 WL 4359229, at *9 (E.D. Cal. Feb. 23, 2012) in which the court concluded that the plaintiffs had pleaded facts that "as alleged [provided] fair notice of the factual basis of their *Monell* claim and the legal grounds upon which it rests." Specifically, the court in *Duenez* found the plaintiffs' allegations that defendant, a person with final policymaking authority, told the press that the police shooting was justified, supported the shooting of the decedent, and had seen footage of the incident at the time he made statements to the press, therefore ratifying the shooting as within the policy of the defendant city, were sufficient to state a cognizable *Monell* claim. *Id.* at *9. Plaintiffs' *Monell* claim as asserted in their complaint is not supported by such factual allegations.

Moreover, by plaintiffs' own admission, a claim based on a failure to train must allege facts showing that defendants "disregarded the known or obvious consequence that a particular omission in their training program would cause municipal employees to violate citizens' constitutional rights." (Doc. No. 31 at 4) (quoting *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014)). Specifically, in order to state a claim for failure to train under *Monell*, a plaintiff must allege and show that: "(1) the existing training program is inadequate in relation to the tasks the particular officers must perform; (2) the officials have been deliberately indifferent to the rights of the persons with whom the police come into contact; and (3) the inadequacy of the training 'actually caused the deprivation of the alleged constitutional right.'" *Reason v. City of*

*Richmond*, No. 20-cv-01900-WBS-EFB, 2021 WL 107225, at *3 (E.D. Cal. Jan. 12, 2021) (quoting *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989)). Here, plaintiffs have not provided any factual allegations: (1) as to how officer training by defendants County of Calaveras or DiBasilio is allegedly inadequate; (2) that the officials have been deliberately indifferent to the rights of mentally ill persons; or (3) that the inadequacy of the training was what actually caused the alleged deprivations of plaintiffs' constitutional rights. For example, plaintiffs allege no underlying facts as to how defendant DiBasilio supposedly failed to implement the Behavioral Health Triage Program that he created, how failing to implement that program would cause the rights of mentally ill persons like the decedent to be violated, or how the alleged failure to implement the program actually caused the deprivations of the decedent's constitutional rights. Although plaintiffs assert that defendants failed to adequately train sheriff's deputies regarding how to deal with mentally ill individuals, plaintiffs fail to allege any underlying facts connecting those conclusory allegations to defendants' alleged actions giving rise to plaintiffs' causes of action in this case.

The court finds that plaintiffs have failed to state a cognizable *Monell* claim. Accordingly, defendants' motion to dismiss plaintiffs' third cause of action will be granted with leave to amend.

**C.     Leave to Amend**

Federal Rule of Civil Procedure 15 instructs courts to "freely give leave when justice so requires" and that rule is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Nevertheless, leave to amend need not be granted where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile. *See Amerisource Bergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

Plaintiffs appear to request leave to amend their FAC with respect to their third cause of action. (*See* Doc. No. 31 at 6–7.) Defendants, in contrast, contend that both plaintiffs' first and third causes of action should be dismissed without leave to amend. (*See* Doc. No. 32 at 6.) However, neither party provides any argument in support of their requests with respect to leave to

amend. In any event, the court is not yet persuaded that granting further leave to amend with regard to plaintiffs' *Monell* claim would be futile. As discussed above, the undersigned has concluded that the third cause of action for a *Monell* violation is deficient due to the insufficiency of the factual allegations of the FAC. It remains at least conceivable that plaintiffs' claims against defendants could survive a motion to dismiss if pled sufficiently. Accordingly, the court will grant plaintiffs a final opportunity to amend their complaint as to their third cause of action.

**CONCLUSION**

For the reasons set forth above:

1. The Rule 12(b)(5) motion to dismiss plaintiffs' complaint brought on behalf of defendant Boberg (Doc. No. 17) is denied;

2. The Rule 12(b)(6) motion to dismiss plaintiffs' first cause of action of the FAC brought on behalf of defendants County of Calaveras, DiBasilio, Stevens, Moser, and Terry (Doc. No. 24) is denied as to plaintiffs Devin James Corrigan and Kirstin Lynn Corrigan and granted as to plaintiffs Thomas James Corrigan and Kathleen Ann Waite;

3. The Rule 12(b)(6) motion to dismiss plaintiffs' third cause of action of the FAC brought on behalf of defendants County of Calaveras, DiBasilio, Stevens, Moser, and Terry (Doc. No. 24) is granted with leave to amend;

4. Within thirty (30) days from the date of service of this order, plaintiffs are directed to either file a second amended complaint or notify the court of their intention to proceed only on their first and second causes of action; and

5. Plaintiffs are directed to serve the current FAC or any future second amended complaint on defendant Boberg and the Deputy Attorney General within thirty (30) days of this order or the filing of any second amended complaint, whichever is later.

IT IS SO ORDERED.

Dated: **June 21, 2021**

UNITED STATES DISTRICT JUDGE